Kenneth Wayne CLARK, Appellant,

v.

**PROGRESSIVE PREFERRED INSURANCE COMPANY,**
Respondent.

**No. WD 74631.**

Missouri Court of Appeals,
Western District.

Dec. 26, 2012.

Michelle N. Higinbotham, Lee's Summit, MO, for appellant.

Suzanne R. Bruss and Nikki E. Cannezzaro, Kansas City, MO, for respondent.

Before Division One: THOMAS H. NEWTON, Presiding Judge, JOSEPH M. ELLIS, Judge and GARY D. WITT, Judge.

GARY D. WITT, Judge.

This appeal involves a dispute over coverage on an automobile insurance policy. The insured driver argues that pursuant to policy language, the insurer did not effectively cancel the policy and hence that the coverage was in effect at the time of an automobile accident. The Circuit Court of Jackson County entered summary judgment in favor of the insurer. We reverse.

## Factual and Procedural History

On September 10, 2004, Appellant Kenneth Clark ("Clark") paid the premium of $181 for a contract for automobile insurance coverage with Progressive Preferred ("Progressive") on a 1979 pick-up truck. The policy provided for liability and uninsured motorist coverage. The coverage period was September 10, 2004 through March 10, 2005, and Clark paid the premium in full. The policy number and underlying contract at all times throughout the course of dealing remained the same.

On December 22, 2004, Clark added comprehensive and collision coverage to his policy, updated his address and added a lien holder. Progressive sent Clark an "Auto Insurance Bill" with a "Payment Coupon" to remit $285 for the policy changes. Progressive also mailed a "Declarations Page," indicating that the additional coverage was effective December 22, 2004 through March 10, 2005. The $285 additional premium was due on January 6, 2005.

On January 11, 2005, Progressive sent Clark a "Cancel Notice" with a "Payment Coupon" to remit $290, for the $285 that was due January 6, 2005 and a $5 late fee. The "Cancel Notice" portion of the document stated:

> We have not received your payment. If we do not receive your payment, your policy will be canceled at 12:01 a.m. on January 22, 2005 because you did not pay the required premium. To maintain continuous coverage, your payment must be received or postmarked by 12:01 a.m. on January 22, 2005. If you have already sent your payment—thank you.

Also included on the "Cancel Notice" to Clark was this statement: "You can make immediate payments by using a credit card or authorizing a withdrawal from your

checking account.... Have your account number ready and your payment will be credited immediately." Additionally, the "Cancel Notice" provided "Payments received after January 11 will appear on your next statement. You may call Automated Customer Service . . . to make sure we received your payment."

The "Payment Coupon" portion of the January 11, 2005 document reiterated the amount due and stated: "To maintain continuous coverage, your payment must be received or postmarked by 12:01 a.m. on January 22, 2005."

Progressive next sent Clark a document dated January 31, 2005 (that, per both parties at oral argument, was mailed on February 3, 2005), that was titled "Your policy was canceled" and again included a "Payment Coupon." This document indicated that the policy was canceled as of January 22, 2005 at 12:01 a.m. because Progressive had not received payment. The "Your policy was canceled" portion of the document stated: "We were required by law to continue coverage until the date of cancellation. You still owe . . . for the coverage provided. Please pay this amount by the due date so we can avoid referral to a collection agency. This payment will not reinstate your policy." The "Payment Coupon" indicated that $94 was due by February 10, 2005.

The cancellation was premised on this provision from the policy:

**You** may cancel this policy by calling or writing **us,** and stating the future date that **you** wish the cancellation to be effective.

**We** may cancel this policy by mailing a notice to the named insured shown on the **Declarations Page** at the last known address appearing in **our** records. If **we** cancel this policy during the first sixty (60) days of the initial policy period, notice will be mailed at least ten

(10) days before the effective date of cancellation. After this policy has been in effect for more than sixty (60) days, notice of cancellation due to any reason other than nonpayment of premium will be mailed at least thirty (30) days before the effective date of cancellation.

**We** may cancel **your** policy at any time if **you** fail to pay the required premium when due. If **we** cancel this policy due to nonpayment of premium, other than at the end of a policy period shown on the **Declarations Page,** notice of cancellation will be mailed before the effective date of cancellation. However, if **we** have offered to renew or continue **your** policy before the end of the policy period shown on the **Declarations Page, your** policy will end, without notice, at the end of that policy period if **you** fail to pay the required premium when due to continue the policy.

**We** may cancel this policy for any reason within the first sixty (60) days of the initial policy period.

After this policy is in effect for more than sixty (60) days, or if this is a renewal or continuation policy, **we** may only cancel for one or more of the following reasons:

1. **you** do not pay the required premium for this policy when due;

2. loss of driving privileges . . .

3. any other reason specified by law.

With respect to cancellation, this policy is neither severable nor divisible. Any cancellation will be effective for all coverage for all persons and all vehicles.

If this policy is canceled and a notice of cancellation is mailed to **you,** coverage will not be provided as of the effective date and time shown in the notice of cancellation.

(Emphasis in original.)

Clark was involved in an automobile accident on January 28, 2005. Both

Clark and Progressive sought a declaratory judgment on whether the policy was enforceable and provided coverage at the time of the accident. The trial court entered summary judgment in favor of Progressive, finding that the policy was ineffective on the date of the automobile accident due to the combination of Clark's nonpayment, Progressive's notice of cancellation, and the passage of ten days. Though not an issue on appeal, the trial court further found Progressive's proof of mailing to be adequate.

## Standard of Review

■ "The trial court makes its decision to grant summary judgment based on the pleadings, record submitted, and the law; therefore, this Court need not defer to the trial court's determination and reviews the grant of summary judgment *de novo.*" *Bank of America, N.A. v. Reynolds,* 348 S.W.3d 858, 860 (Mo.App. W.D.2011) (citing *ITT Commercial Fin. Corp. v. Mid–Am. Marine Supply Corp.,* 854 S.W.2d 371, 376 (Mo. banc 1993) and Rule 74.04).[1] In reviewing the decision to grant summary judgment, this Court applies the same criteria as the trial court in determining whether summary judgment was proper. *Id.* Summary judgment is only proper if the moving party establishes that there is no genuine issue as to the material facts and that the movant is entitled to judgment as a matter of law. *Id.* "An abundance of caution must be exercised in granting a motion for summary judgment because it is an extreme and drastic remedy that borders on the denial of due process because the opposing party is denied its day in court." *Bank of Am.,* 348

S.W.3d at 860 (quoting *Kuhn v. Budget Rent–A–Car of Mo., Inc.,* 876 S.W.2d 668, 672 (Mo.App. W.D.1994)).

## Analysis

The question in this case is whether Progressive established as a matter of law that the policy between Clark and Progressive was effectively canceled and unenforceable at the time of Clark's accident.[2] Clark argues that the trial court erred in granting summary judgment in favor of Progressive because the January 11, 2005 letter was not a present cancellation as required by case law, but rather a notice of intent to cancel at a future date. As noted above, the notice in question stated "your policy will be canceled at 12:01 a.m. on January 22, 2005." This, Clark argues, was insufficient notice pursuant to the policy and pursuant to Missouri law.

■ Insurance policies are contracts, and the rules of contract construction govern. *Blair v. Perry Co. Mut. Ins. Co.,* 118 S.W.3d 605, 606 (Mo. banc 2003) (citations omitted). "Absent an equitable ground, an insurance policy may be cancelled only: 1) by mutual assent of the parties, or 2) under the terms of the policy." *Id.* (citation omitted). When the insurer unilaterally cancels, as here, it must do so in strict compliance with the terms of the policy. *Id.* In this case, Progressive's cancellation for nonpayment is a unilateral cancellation.

As such, we look first at the "cancellation" provision of the policy between Clark and Progressive. The policy language, set out above, delineates different notice re-

---

1. All rule citations are to the Missouri Supreme Court Rules (2012) unless otherwise indicated.

2. Neither party argues that the underlying liability coverage, which had previously been paid for the entire six month policy period, was still in effect at the time of the accident nor that the cancellation notice should have been solely applicable to the additional coverage requested but not paid. Therefore, we do not reach that issue.

quirements for policies that are within the initial sixty-day period and for policies that have been in effect more than sixty days. Because Clark's policy was formed September 10, 2004 and continued under the same contract at all relevant times, it was in effect for more than sixty days by the time the cancellation provision would have been triggered in January of 2005. Pursuant to its terms, where the policy has been in effect for less than sixty days, notice to cancel for any reason will be mailed at least ten days before cancellation. Where, as here, the policy has been in effect for more than sixty days, notice of cancellation due to any reason other than the nonpayment will be mailed at least thirty days before the effective date of cancellation.

 Though the policy does not say how much notice is required where the policy has been in effect for more than sixty days and where the reason for cancellation is nonpayment, both parties treat the notice requirement as being at least ten days under the policy as it would be if the policy were in its initial sixty days. "Absent an ambiguity, an insurance policy must be enforced according to its terms." *Seeck v. Geico Gen. Ins. Co.*, 212 S.W.3d 129, 132 (Mo. banc 2007) (citation omitted). "If, however, 'policy language is ambiguous, it must be construed against the insurer.'" *Id.* (citation omitted). Interpreting the policy to require at least ten days notice of cancellation is consistent with Missouri law as well: "[W]here cancellation is for nonpayment of premium at least ten days' notice of cancellation shall be given." § 375.003.1.[3] The purpose of the policy provision granting the insured ten days' notice before cancellation takes effect is to give the insured the opportunity to secure replacement insurance. *Stone v. Farm Bureau Town & Country Ins. Co. of*

*Mo.*, 203 S.W.3d 736, 746 (Mo.App. S.D. 2006) (citation omitted).

The parties further agree that the language of the policy at hand is similar to that in the *Blair* case, and both look to *Blair* for resolution. In *Blair*, a child was injured on October 21, 1998 at her trailer court, the owner of which had contracted for liability insurance. 118 S.W.3d at 607. As in the case at bar, the *Blair* policy had a ten-day notice requirement for cancellation due to nonpayment. *Id.* Specifically, the policy language stated: "We may cancel this policy ... by mailing or delivering to the named insured a written notice before the cancellation is to take effect. The notice must be given: not less than 10 days before the cancellation is to take effect when the cancellation is based upon ... nonpayment of premium." *Id.*

On September 14, 1998, the insurer sent a "NOTICE OF PAYMENT DUE" advising "POLICY VOID IF NOT PAID BY DUE DATE," which was October 3. The insured missed the October 3 payment. *Id.* On October 14, the insurer sent another "NOTICE OF PAYMENT DUE" which stated that the policy had "LAPSED FOR NON-PAYMENT" and that "NO COVERAGE IS BEING PROVIDED AT THIS TIME." *Id.*

Our Supreme Court determined that the *Blair* insurer had not adequately provided notice to the insured under the policy's cancellation provision until the October 14 notice that indicated "no coverage is being provided at this time." When that cancellation was moved forward to become a "present cancellation," on October 14, the accident fell within the subsequent, statutorily and contractually mandated ten-day window of coverage in effect until October 24. In so holding, the *Blair* Court relied on the following precedent:

---

3. All statutory references are to RSMo 2000 as supplemented unless indicated otherwise.

213

A unilateral cancellation must strictly comply with the policy. [*MFA Mutual Ins. Co. v. Southwest Baptist College, Inc.*, 381 S.W.2d 797, 801 (Mo.1964).] "There would have to be an unequivocal, unmistakable act of cancellation, not dependent upon some future event, and a mere intention to cancel would not suffice to effect a cancellation under the policy provisions." *Id.* (citations omitted). "A notice of cancellation to be effective must be a present cancellation as distinguished from an intention to cancel at a future day." *Malin v. Netherlands Ins. Co.*, 203 Mo.App. 153, 219 S.W. 143, 144 (1920). "The assured must be informed, not that the policy *will* be cancelled, but that it *is* cancelled." *Chrisman & Sawyer Banking Co. v. Hartford Fire Ins. Co.*, 75 Mo. App. 310, 314 (1898) (emphasis in original).

118 S.W.3d at 607.

Part of the key to *Blair*, then, is that, to be effective, a cancellation notice cannot indicate that the policy *will be cancelled* but must indicate that it in fact *is cancelled*. Viewing the policy language between the policy in *Blair* and the policy at bar as similar, the trial court boiled down *Blair* to one key sentence: "The policy here requires nonpayment, notice, and the passage of 10 days—in that order—before cancellation takes effect." 118 S.W.3d at 607. As such, the trial court in this case noted simply that Clark had not paid the premium, that Progressive had given notice of cancellation, and that ten days had passed, thereby rendering the cancellation effective before the time of the automobile accident. But that cursory viewing of the events at hand ignores the "present cancellation" requirement in *Blair*. And a careful consideration of Progressive's argument on appeal illustrates why.

First, the language regarding notice of cancellation in both Progressive's policy with Clark and in the *Blair* policy relies on the condition precedent of nonpayment. As noted above, in the policy between Progressive and Clark, the contract read: "If **we** cancel this policy due to nonpayment of premium, . . . notice of cancellation will be mailed before the effective date of cancellation." And, as noted above, both parties treat the policy as requiring at least. ten days of notice. Similarly, in *Blair*, the policy specified that it could be cancelled if notice is given "Not less than 10 days before cancellation is to take effect when cancellation is based upon . . . Nonpayment of premium . . ." 118 S.W.3d at 607. Both policies' provisions require nonpayment, notice, and the passage of ten days, in that order, before cancellation takes effect. *Id.*

Second, both in *Blair* and in the case at bar, the notices of cancellation that the insurers advance as present cancellations indicated a mere intention to cancel at a future date and not a present cancellation. In *Blair*, the cancellation that the insurer argued was a present cancellation advised "POLICY VOID IF NOT PAID BY DUE DATE." In the case at bar, Progressive argues its notice provided present cancellation when it stated: "If we do not receive your payment, your policy will be canceled at 12:01 a.m. on January 22, 2005 because you did not pay the required premium. To maintain continuous coverage, your payment must be received or postmarked by 12:01 a.m. on January 22, 2005."

Progressive acknowledges that our Supreme Court determined the effective cancellation date of the policy was ten days after the effective notice of cancellation, bringing the *Blair* accident within the mandatory ten-day extension. But Progressive argues that the language of the cancellation notice that the *Blair* court

ultimately deemed effective—the one that truly indicated that coverage was cancelled at present time—allowed for the insurer to continue to expect payment. Specifically, Progressive argues that its "Cancel Notice" that included a "Payment Coupon" is similar enough to the October 14 notice in *Blair* (which included the phrase "NO COVERAGE IS BEING PROVIDED AT THIS TIME") such that the *Blair* court would similarly accept a bill that included a warning of a notice of cancellation at a future time.

██ But that is a misinterpretation of *Blair*. To begin, we note that there is no clarification of what the "NOTICE OF PAYMENT DUE" in *Blair* was for; it could have been for the ten days of lapsed coverage, similar to the $94 that Progressive sought from Clark when it finally issued its effective, present cancellation. But more importantly, whether a notice can contain the possibility to redeem and still be effective is irrelevant: *Blair* unequivocally demands a "present cancellation." "[I]t is not sufficient to inform the insured that his policy *will be* canceled; instead, he must be told that his policy *is being* canceled." *Stone*, 203 S.W.3d at 745 (emphasis in original) (citing *Blair*, 118 S.W.3d at 607). And Progressive's notice, "your policy *will be* canceled at 12:01 a.m. January 22, 2005" quite simply is not a present cancellation under the case law (emphasis added). At best, this document simply showed an intention by Progressive to cancel the policy in the future if Clark did not pay the premium by the due date. The contingent nature of the language prevented it from being an effective cancellation notice under *Blair*. *See id.; see also Stickler v. Foremost Signature Ins. Co.*, 150 S.W.3d 314 (Mo.App. S.D.2004) (where unilateral notice of cancellation for nonpayment did not strictly comply with policy,

J.N.O.V. properly entered in favor of insured).

In this case, then, pursuant to *Blair*, the first effective policy cancellation notice was dated January 31, 2005 and, as the parties acknowledged at oral argument, was mailed February 3, 2005. At that point, Progressive complied with the cancellation provisions in the policy because all three essential events set out in *Blair* had occurred: the nonpayment of the premium, notice of cancellation, and the passage of at least ten days. The January 28, 2005 accident is thus within the window of coverage. Summary judgment in favor of Progressive was entered in error.

This matter is reversed and the cause remanded for further proceedings consistent with this opinion.

All concur.